[No. 1427. Decided November 10, 1894.]

## M. D. SMITH, RECEIVER, *Respondent*, v. JAMES HOPKINS ET AL, *Appellants*.

CORPORATIONS—INSOLVENCY—FRAUDULENT CONVEYANCES—ACTION BY RECEIVER TO RECOVER ASSETS—EVIDENCE—JUDGMENT—COLLATERAL ATTACK.

The action of the court in placing an insolvent insurance company in the hands of a receiver, even if erroneous, cannot be attacked in an action by the receiver to recover certain property of the company, to the possession of which he, as receiver, is entitled.

The transfer by an insurance company, which was insolvent and practically out of business, of a portion of its assets to certain creditors, who were either officers of the corporation or intimately connected therewith, was such a preference by an insolvent corporation as to constitute a fraudulent conveyance and warrant the recovery by the receiver of such corporation of the property so transferred.

In a suit by the receiver of an insolvent insurance company to recover possession of stock notes fraudulently transferred by the company to the makers, the makers cannot set up the defense that the notes were executed upon the condition that they should not be binding unless approved by the state insurance commissioner, as such notes, having been delivered to the company to be used as

NOTE.—The right of insolvent corporations to make preferences between creditors is the subject of an elaborate note to the case of Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., (Tex.) 22 L. R. A. 802.

assets, would retain that character until their legal surrender to their makers.

But slight testimony is required to establish a prima facie case, where it is sought to prove the small value of the assets of an insolvent corporation for which the appointment of a receiver is asked.

*Appeal from Superior Court, Spokane County.*

*Fitzgerald & Hopkins* and *Jones, Voorhees & Stephens,* for appellants.

*Jones, Belt & Quinn* and *James A. Haight,* for respondent.

The opinion of the court was delivered by

HOYT, J.—This action was brought by respondent to recover from the defendants certain notes and property, which it was alleged were a part of the assets of the Farmers' Insurance Company, of which the respondent as receiver was entitled to the possession, and to enjoin said defendants and each of them from in any manner disposing of the same. Answers were put in by all of the defendants who were served with process, and upon the issues thus made the cause was tried and findings of fact and law filed and judgment rendered against defendants, substantially as prayed for in the complaint.

Nearly all the errors assigned grow out of the findings of fact. It is claimed on the part of the appellants, and elaborately argued by their counsel, that nearly all of such findings were unwarranted by the proofs. Only one legal proposition is presented which could have had any influence upon the court in the determination of the facts, and that is founded upon the claim that the proceedings by which the affairs of the insurance company were placed in the hands of a receiver for the purpose of being wound up were insufficient for that purpose. This contention was based upon two grounds; one that the court erred in its conclusion that the company was insolvent or in such a condition as to warrant the placing of its affairs in the hands of a receiver; the other

that the suit for that purpose should have been prosecuted in the name of the state and not in the name of the insurance commissioner.

This latter proposition is too technical to receive any consideration at our hands. Under our liberal system it is results that are sought, and it is sufficient in any proceeding if the parties are fairly informed of the nature thereof and of the facts relied upon as the grounds for the relief asked. It could make no difference to the defendants whether the suit was brought in the name of the state or in that of the insurance commissioner, or whether it was entitled at all. The facts set out in the complaint were what they were called upon to answer, and unless the question of misnomer of the plaintiff was specially raised by a plea or otherwise, at the earliest possible moment, it could not thereafter be made available. We see no reason, however, for holding that the suit should be brought in the name of the state rather than that of the insurance commissioner. But it is not necessary to decide as to that as the question is immaterial.

The other objection is not available to the defendants in this action. The court found the necessary facts and made its order placing the company in the hands of a receiver; and its action in so doing, however erroneous, could not be attacked in this proceeding. If the court had jurisdiction, its judgment unappealed from is final as between the parties, however erroneous it may have been. The court, therefore, did not determine the facts in this case upon any erroneous opinion as to the law, and its determination in regard thereto will not be set aside, unless an examination of the proofs satisfies us that his conclusions derived therefrom were clearly erroneous. From such an examination we are not only not satisfied that the facts were wrongly found, but, on the contrary, are of the opinion that such proofs are sufficient to support every finding of fact made by the lower court.

The principal question remaining is as to the rightfulness of the court's conclusions of law from the facts found. It is strongly urged on the part of the appellants that the property having been delivered to them in payment of claims which

they had against the corporation, they became *bona fide* owners thereof, and that it was no longer a part of its assets. In support of this proposition numerous authorities have been cited and three or four cases decided by this court are relied upon ; but, in our opinion, none of the cases go to the extent of sustaining transfers made in payment of the debts of a corporation under the circumstances disclosed by this record.

Under the findings of fact the company had been insolvent for a long time, and had been a subject of special examinations on the part of the insurance department, and was no longer, in any proper sense of the term, a going concern. For while it is true that it appeared from the proofs that it was still receiving an occasional application for insurance, this circumstance could have little weight in view of the nature of an insurance company's business, and the fact that its condition might not be known in all localities where it had agents. Not only was the company thus insolvent and practically out of business at the time of its attempted transfer of a portion of its assets to these defendants, but the circumstances surrounding the action of the company which, from the relation which the defendants bore to it, must have been known to them, were such as to arouse the suspicions of a reasonably prudent man as to the *bona fides* of the transaction. The entire proceedings relating to the transfer in question were taken with full knowledge of the desperate condition of the company and of the fact that its available assets were entirely insufficient to meet its liabilities, present and prospective, and were so taken with the evident intent to prefer those creditors who were either officers of the corporation or intimately connected therewith, over all others.

We do not question the authority of the cases cited by appellants, but hold that they do not apply to this case, for the reason that the corporations as to which those cases related were, at the time of the transactions in question, going concerns, in a fair and reasonable application of that term, even although they might not have had sufficient assets to have at once discharged their liabilities ; while this insurance com-

pany, as we have already said, was not only in failing circumstances, but had to all intents and purposes actually failed, to the knowledge of these defendants at the date of the transaction in question. We therefore agree with the conclusions of law drawn from the facts by the trial court, to the effect that the defendants were not the holders in good faith of the notes and property sought to be recovered, and that they were as much a part of the assets of the corporation, to the possession of which the receiver was entitled, as though there had been no attempted transfer thereof.

Another important proposition has been argued, growing out of the alleged fact that the stock notes of the defendants were not binding upon them, for the reason that they were executed upon certain conditions which had not come to pass. It is claimed that the notes were signed and delivered to the company upon condition that they should only become binding if approved by the insurance commissioner and passed by him as a part of the assets of the corporation, and that he had never so approved and passed them, and for that reason the notes were not binding upon the makers.

There is no doubt but that conditional subscriptions to the stock of corporations may be made and payment therefor depend upon the performance of the conditions; but in our opinion this can only be done at the time of the organization of the company and before such organization has become complete; and it is doubtful whether these notes were made under such conditions as to make their violation a defense, even if the conditions were legal and such as could be properly made as between the subscribers and the corporation. But the conditions relied upon as a defense were not, in our opinion, such that the court could give any effect thereto. The notes, when they passed into the hands of the company to be presented to the insurance department as a part of its assets, became, at least as between the creditors of the corporation and the makers, a part of the assets, uninfluenced by the condition that they should not be binding if the insurance commissioner rejected them as unavailable. Beside, it may be doubted whether the receiver would not be enti-

6-10W

tled·to possession of these notes regardless of the question as to whether or not they could be enforced against the makers. For, unless effect is given to the transaction by which the company transferred to these defendants the assets of the corporation in payment of their claims, there was no legal surrender of the notes to their makers, and hence they remained a part of the assets of the corporation to the possession of which the receiver was entitled. And we have already seen that the entire transaction was of such a fraudulent nature that it could give no effect to the transfer.

Some other reasons are suggested why the decree should be reversed. It is claimed that the court erred in refusing to allow appellant Gilbert to testify as to the circumstances surrounding the execution of his note ; but since it is evident that these circumstances could only refer to the conditions under which he signed, similar to those to which reference has been made, it does not appear that any injury resulted from the exclusion of the testimony, however competent it may have been.

Fault is found with the form of the decree, and it is alleged that it seemed to contemplate an offset of the indebtedness of the company to Stirman and Fitzgerald against the indebtedness of Fitzgerald to the company ; but we are unable to find anything in the decree which warrants any such contention. It is true that in the findings of fact there are many things stated relating to the condition of the accounts as between the several defendants and the company, which were · unnecessary and form no part of the material facts relied upon and necessary to support the decree. The only facts necessary to warrant the decree of the court were that the insurance company was in the hands of the plaintiff as receiver ; that the assets of the company or some part thereof, had passed into the hands of the defendants, and that they were not *bona fide* holders thereof.

Taking the case as a whole we are abundantly satisfied that the decree of the lower court was fully warranted by the facts. Here was an insurance company against which

the insurance department of the state had commenced proceedings. Its officers and those intimately connected with them divided amongst themselves so nearly all of its assets, that the court found that there could not be realized from those remaining more than $2500, while the indebtedness still unpaid amounted to many thousands. It is claimed on the part of the appellants that there was not sufficient testimony to warrant the court in coming to the conclusion that these assets were only of this value. But since that question was substantially disposed of in the proceeding in which the receiver was appointed, we have given it but little attention. We are satisfied, however, that the proof warranted the finding of the court. To prove the small value of these assets was in the nature of the proving of a negative proposition, and only slight testimony should be required under such circumstances to establish a *prima facie* case. There was some affirmative testimony as to the financial condition of the most of the makers of the notes, and there was testimony to the effect that bankers in the city of Spokane placed little or no value upon the notes which constituted the assets left after this fraudulent distribution. It is true that this testimony was not of the most satisfactory nature, and it is also true that some of the leading bankers were unable to testify as to the responsibility of many of the makers. But it appears from their testimony that the reason they were unable to state the financial condition of such makers was the fact that they had never heard of them ; and the fact that such makers were unknown to these bankers, shown to have a general knowledge of most of the men of any financial ability in that part of the state, was in itself a circumstance tending strongly to support the affirmative testimony upon the proposition of their want of responsibility.

The judgment of the superior court will be affirmed.

SCOTT, J., concurs.

ANDERS, J. concurs in the result.

STILES, J., (*concurring*).—Under our law an insurance

company is peculiarly under the control of the state, which exacts good faith in the organization and conduct of the affairs of the concern, as a pre-requisite to a right to exist. The assets must be kept up to a prescribed amount, and the commissioner is made the judge of their sufficiency, depending only upon the concurrence of the court to order the corporation to be wound up. Preferences, and conditional notes are, in such a case, peculiarly obnoxious to the law, and I concur in the affirmance with a satisfaction that only justice has been done.